## Pennsylvania Department of Public Welfare v. Taylor

*Sidney V. Blecker,* Assistant Attorney General, and *William C. Sennett,* Attorney General, for the Commonwealth.

*Douglas G. Dye,* for appellant.

LIPSITT, J., August 5, 1970.—Lizzie Taylor has appealed to this court from an adjudication by the Department of Public Welfare dated June 20, 1969. She had requested payment from the department for a baby-sitter and for a homemaker to enable her to undergo treatment at a health center for mental illness. The department denied a special allowance for such services.

At the time of the administrative hearing held on April 15, 1969, Mrs. Taylor and her six minor children were receiving a grant of $187 semimonthly under the "Aid and Services to Families With Needy Children" program (sometimes called AFDC) funded with both Federal and State moneys which originated with the Social Security Act of 1935. At the

hearing, there was testimony offered to show the necessity for immediate psychological therapy for Mrs. Taylor which was available at the Temple University Mental Health Center. It was the position of appellant that she could not engage in this day program, because she could not leave her children unattended while receiving treatment and that the regular welfare allowance could not provide the source of funds to pay for a baby-sitter's services or for housekeeping services to reduce Mrs. Taylor's work load. It was testified she lived alone with her children, and there was no breadwinner in the household.

The decision of the Secretary of Public Welfare, which was sent to appellant in a letter form, stated, in part:

"Departmental regulations do not presently provide for payment for child care for persons other than those who are engaged in work and training. Under Legislation adopted in 1961 each County is mandated to develop a comprehensive county child welfare program to provide for the care of children and, if possible, to enable children to remain in their own homes."*

Appellant's basic argument is that the Department of Welfare has a duty to provide for the services requested pursuant to State and Federal law as well as the regulations of the Federal Department of Health, Education and Welfare. Prior to January 10, 1969, sec. 3212.8 of the Pennsylvania Public Assistance Manual authorized payment for baby-sitting

---

* Appellant was granted special payment for a baby-sitter for a two-week period beginning January 8, 1969, in the amount of $70 as there was evidence at the hearing that appellant employed a baby-sitter for a two-week period when she was hospitalized apparently due to a misunderstanding that arrangements for such service could be made.

and housekeeping activities under certain conditions. This section read:

"The actual minimum cost of an item or personal care service may be included in computing the grant if the purchase of the item or service will, in the judgment of the Executive Director or his delegate, prevent the need for a more expensive type of assistance.

"The expenditure involved is in direct relationship to and justifiable in terms of the anticipated savings to accrue to the Department by making the allowance.

"The factors leading to the decision of the County Office are to be entered in the case record."

This section was repealed effective as of January 1, 1969, although the change in regulation was not certified until January 10, 1969. Since January 1, 1969, departmental regulations permit allowance for babysitting only for those persons who are engaged in work or training for work under the work incentive program: section 3191.15 of the manual.

The determination of this controversy may be resolved upon consideration of the question whether or not the Pennsylvania Department of Public Welfare could legally delete the services provided under section 3212.8 of the Pennsylvania Public Assistance Manual. The Commonwealth contends that this action was properly within the department's discretion and was taken, first, because of the lack of funds to pay for these extra services and, secondly, because the legislature had mandated that these services be provided by local county institution districts under the Act of June 24, 1937, P. L. 2017, sec. 405, as last amended by the Act of December 1, 1965, P. L. 1003, sec. 1, 62 PS §2305.

Appellant cites numerous authorities which she urges empower and direct the Department of Public

Welfare to provide the assistance which she sought. The wording of a statute or regulation is, of course, significant, but the phraseology upon which appellant relies need not be set forth for interpretation. A perusal of article 4, sec. 408(a), of the Public Welfare Code of June 13, 1967, Act no. 21, 62 PS §408(a); section 401 of the Social Security Act of August 14, 1935, c. 531, as amended, 42 U.S.C.A. §601, and regulation 220.24 of the Department of Health, Education and Welfare, 45 CFR 220.24, all contain general statements which would permit the Department of Public Welfare to grant the allowances which are at issue here. Undoubtedly the Federal and State measures are intended to prescribe for needs of individuals to relieve their distress. But nowhere in any statute or regulation is there any language which may be pinpointed compelling or mandating house-cleaning services or baby-sitting services. State agencies must exercise their discretion in carrying out the intention of the statutes and regulations under both Federal and State laws.

In Dandridge v. Williams, 397 U. S. 471 (1970), the United States Supreme Court pointed out that the Federal courts would be most reluctant to interfere with the decisions of State agencies as to how welfare money should be distributed among welfare recipients. In this case, a Baltimore mother of eight children brought suit to invalidate a Maryland ceiling of about $250 per month regardless of the size of a family and actual need. The district court, 297 F. Supp. 450 (D. Md., 1969), whose decision is cited by appellant herein, held that the Maryland regulation was "invalid on its face for overreaching" and thus violative of the equal protection clause of the fourteenth amendment to the United States Constitution. In reversing the district court and rejecting

the constitutional objections, the Supreme Court, through Mr. Justice Stewart said, at page 487:

". . . the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court . . . the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients."

In the instant case, the Department of Public Welfare decided that it did not have sufficient funds for the program required by the aforementioned section 3212.8 of the Public Welfare Manual. Appellant does still receive public assistance for herself and her children but does not receive any allowance for the special services.

It may also be noted that the Supreme Court has held that State laws or regulations involving public assistance will not be invalidated on due process grounds or on any other constitutional grounds where they involve policy judgments by those responsible for the administration of assistance programs. See Snell v. Wyman, 281 F. Supp. 853 (1968), affirmed in 393 U. S. 323 (1969).

To hold these services presently requested to be a matter of right could result in a denial of assistance to many eligible recipients because of lack of available funds. The conclusion must be reached that in the absence of bad faith, fraud or abuse, the Department of Public Welfare may exercise its discretion in administering all of its public assistance programs to achieve the widest distribution of benefits for those in need.

Appellant also contends that the decision letter of the Secretary of Public Welfare contained neither

findings of fact nor conclusions of law and accordingly violated Federal and Pennsylvania statutes and hearing requirements. The Pennsylvania Administrative Agency Law of June 4, 1945, P. L. 1388, sec. 34, 71 PS §1710.34, does require an administrative agency in its adjudication to "contain findings and the reasons for the adjudication." There are similar requirements found in the Federal laws and regulations relative to the holding of administrative hearings. The secretary's decision was in this case made informally in the form of a letter. It is urged, therefore, that the decision of the secretary is not supported by substantial evidence in the record. The Department of Public Welfare may be somewhat unique in the form which it uses in handing down its decisions, but it cannot be said that the adjudication did not include a finding and a reason therefor. The essentials were included to meet the standards of the Administrative Agency Law. The facts, of course, were not in dispute. The secretary pointed out that the departmental regulations did not provide for the grant as demanded. It would serve little purpose to remand this case back to the secretary to place his decision in a different format. The crux of the case deals with the right to baby-sitting and housecleaning services, and this problem may be disposed of as a matter of legal determination.

Accordingly, we enter the following:

## ORDER

And now, August 5, 1970, the appeal of Lizzie Taylor from the decision of the Secretary of Public Welfare denying baby-sitting and homemaking services is dismissed.